### UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| THOMAS PILCHER, in his | ) | |
| Capacity as Administrator of the Estate | ) | |
| of CHRISTOPHER ROBERT | ) | |
| MYERS, Deceased | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CASE NO.:   25-cv-72 |
| v. | ) | |
| | ) | |
| CITY OF FOLEY, ALABAMA | ) | |
| MAYOR RALPH HELLMICH | ) | |
| CHIEF THURSTON BULLOCK | ) | |
| DEPUTY CHIEF KEVIN CARNLEY | ) | |
| JAIL CDR LARRY DEARING, | ) | |
| CHIEF C. O. NICOLE PHILLIPS | ) | |
| SHIFT SUPV MELANIE GOUVEIA | ) | |
| C.O. DANTE BAILEY | ) | |
| SHIFT SUPV RAVEN WILLIAMS | ) | |
| C.O. JOHN ASH | ) | |
| C.O. LOUIS BROWER, JR. | ) | |
| CORPORATE MEDICAL PROVIDER | ) | |
| JAIL PHYSICIAN | ) | |
| JAIL NURSE ROSI | ) | |
| 2nd JAIL NURSE | ) | |
| | ) | |
|     Defendants. | ) | |

## COMPLAINT

COMES NOW the Plaintiff, THOMAS PILCHER, as personal

representative of the Estate of Christopher Robert Myers, Deceased, and files his

Complaint against the above-named Defendants, and would show unto the Court

the following, to wit:

### Introduction

The death of Chris Myers was not an accident. It was not an unfortunate consequence of the actions and omissions of the Defendants. It was a preventable tragedy caused by an intentional and deliberate and systemic disregard for human life by those entrusted with his care. The United States Constitution guarantees that no person—regardless of their circumstances—should be subjected to cruel and inhumane treatment while in government custody. That promise was broken when Mr. Myers, a pretrial detainee in the Foley City Jail, was denied the most basic human right: access to medical care. Over the course of his incarceration at the Foley jail, Mr. Myers suffered high blood pressure, heart disease, arrythmia a struggling to breathe, and slowly dying before the eyes of those sworn to protect him. Instead of receiving the emergency medical care that could have saved his life, he was ignored, neglected, and ultimately left to die alone in his cell. By the time jail officials claimed to "find" him unresponsive, rigor mortis had already set in most of his body. This case is not just about one man's suffering—it is about accountability. It is about the duty of public officials to provide humane treatment to those in their custody, a duty that protects the rights of every citizen in this country. If the government can ignore the suffering of a sick and dying detainee in the shadows of a jail cell, then no one is truly safe from the abuse of unchecked power. Defendants, including the City of Foley, Mayor Hellmick, Chief Bullock, Jail Cdr. Dearing, C.O. Chief Phillips and other jail officials, correctional officers,

and medical providers to the Foley City Jail collectively participated in or allowed a cost-cutting scheme of reducing jail personnel that prioritized saving money over saving lives. By systematically underfunding jail operations, reducing jail staff and medical personnel, and condoning an unwritten policy of delaying and denying emergency medical treatment to avoid expensive hospitalization and treatment, they ensured that detainees like Mr. Myers were left to fend for themselves in life-threatening situations. The inhumane treatment of Mr. Myers is not an isolated incident—it is the result of a deeply entrenched culture of negligence and deliberate indifference, and intentional conduct. This lawsuit seeks to expose that culture, hold the responsible parties accountable, and ensure that no other detainee in the Foley City Jail suffers the same cruel and unnecessary fate. The law is clear: government officials cannot look the other way while those in their custody suffer and die. The Constitution does not bend to budget cuts. The right to medical care does not disappear behind bars. Justice demands action, and this lawsuit is a step toward ensuring that no other family must endure the devastation of losing a loved one to a system that treats human lives as expendable. The Plaintiff, Thomas Pilcher, as personal representative of the Estate of Christopher Robert Myers, brings this action to demand justice for Mr. Myers, to hold the Defendants accountable for their unconstitutional actions, and to ensure that the fundamental

rights of all detainees—including the rights to medical care, dignity, and humane treatment—are upheld, protected, and never again ignored.

## The Parties

1.      At all times material hereto, Plaintiff's decedent, Christopher Robert Myers, hereinafter "Mr. Myers," was incarcerated into the City of Foley jail as a pretrial detainee and suffered violations to his 14th Amendment constitutional as a pretrial detainee while under the care custody and control of the Foley city jail.

2.      Defendant City of Foley, Alabama, hereinafter "Foley" is an Alabama municipality organized and existing under the laws of the State of Alabama. Foley is responsible for funding the city jail and police department in Foley, Alabama, including providing adequate funding for medical care, emergency medical and hospital care for individuals in custody at the Foley city jail awaiting or court appearance.

3.      Defendant Ralph Hellmich (hereinafter "Hellmich") was the Mayor of the City of Foley and along with Chief Bullock were policymakers and responsible for operation and management of the Foley city jail facility including but not limited to the funding, the making and enforcing policy and procedures, training of correction officers, and confinement of inmates. Defendant Hellmich, along with Bullock and their jail staff and corrections officers under their supervision, among other things, have a statutory duty under Alabama law and federal law, to keep

inmates safe and secure, and to provide adequate medical treatment including emergency medical treatment to inmates in custody at the Foley city jail. He is sued in his individual capacity.

4.    Defendant Thurston Bullock (hereinafter "Bullock") served as the Chief of Police of the Foley Police Department and as policy maker, was jointly and severally responsible with Defendants Deputy Chief Kevin Carnley, hereinafter "Carnley"), Jail Cdr. Larry Dearing (hereinafter "Dearing"), Chief C.O. Nicole Phillips (hereinafter "Phillips") for enforcing policies and procedures at the Foley city jail facility at all relevant times and for training of jail staff and personnel. Defendants Bullock, Carnley, Dearing, and Phillips along with their jail staff and corrections officers under their supervision, among other things, had a statutory duty under Alabama law and federal law to keep individuals incarcerated at the Foley city jail safe and secure, to provide adequate medical care, and to provide emergency medical treatment and hospitalization to said individuals with serious medical needs. They are sued in their individual capacities.

5.    Defendants Shift Supv Melanie Gouveia  (hereinafter "Gouveia"), C.O. Dante Bailey (hereinafter "Bailey"), at all times were employed by Foley at the Foley city jail facility respectively as the shift supervisor, and correction officer on the 1st shift at the Foley city jail facility and among other things were responsible for implementing the policies and procedures of the Foley city jail for

the care, custody, and control of inmates at all relevant times, during their shifts. Defendants Gouveia, and Bailey, had a statutory duty under Alabama law and federal law to monitor the safety and security of individuals incarcerated at the Foley city jail, and to provide adequate medical care, and to provide emergency medical treatment and hospitalization to said individuals with serious medical needs. They are sued in their individual capacities.

6.     Defendants Shift Supv Raven Williams (hereinafter "Williams"), C.O. John Ash Dante (hereinafter "Ash"), and at all times were employed by Foley at the Foley city jail facility respectively as the shift supervisor, and correction officer on 3rd shift respectively, and among other things were responsible for implementing the policies and procedures of the Foley city jail for the care, custody, and control of inmates at all relevant times. Defendants Gouveia, and Bailey, among other things, had a statutory duty under Alabama law and federal law had a statutory duty under Alabama law and federal law to monitor the safety and security of individuals incarcerated at the Foley city jail, and to provide adequate medical care, and to provide emergency medical treatment and hospitalization to said individuals with serious medical needs. They are sued in their individual capacities.

7.     Defendant C.O. Louis Brower, Jr. (hereinafter "Brower"), and at all times was employed by Foley at the Foley city jail facility as the mid shift

correction officer, and among other things was responsible for implementing the policies and procedures of the Foley city jail for the care, custody, and control of inmates at all relevant times. Defendant Brower had a statutory duty under Alabama law and federal law to monitor the safety and security of individuals incarcerated at the Foley city jail, and to provide adequate medical care, and to provide emergency medical treatment and hospitalization to said individuals with serious medical needs. They are sued in their individual capacities.

8.    Defendant Corporate Medical Provider. (hereinafter "CMP"), is an Alabama for profit business entity organized and existing under the laws of Alabama with its principal place of business was continuously and systematically doing business in Alabama at all times material hereto as a health care provider under contract with Foley, Hellmich, and Bullock, and Dearing, to provide health care services to individuals incarcerated at the Foley city jail, including but not limited to providing emergency medical and hospitalization to said individuals suffering from a serious medical need. Defendant CMP is sued in its corporate and individual capacity.

9.    Defendants Jail Physician (hereinafter "Jail Physician"), Jail Nurse Rosi (hereinafter "Nurse Rosi"), and 2nd Jail Nurse (hereinafter "2nd Jail Nurse"), at all times material hereto, was an agent, servant, and employee of Corporate Medical Provider under contract to provide health care services to individuals

incarcerated at the Foley city jail, including but not limited to providing emergency medical and hospitalization to said individuals suffering from a serious medical need.  Defendant Jail Physician is sued in their individual capacity.

10.    Defendants Jail Nurse Rosi (hereinafter "Nurse Rosi") and 2nd Jail Nurse (hereinafter "2nd Jail Nurse") at all times material hereto were either independent contractors, or agents, servants, and employees of Corporate Medical Provider under contract with Foley to provide health care services to individuals incarcerated at the Foley city jail, and to provide adequate medical care including but not limited to providing emergency medical and hospitalization to said individuals suffering from a serious medical need. They are sued in their individual capacities.

## Jurisdiction and Venue

11.    This action arises under the Eight and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983 (hereinafter "Section 1983") and state law. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and § 1343.

12.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) given that a substantial part of the events giving rise to the Plaintiff's claims occurred in this judicial district.

**Statement of Facts**

13.     On the morning of February 26, 2023 Mr. Myers was driving West on Highway 98 on his way to pick up his finance' and go to church.

14.     On said morning, at approximately 9:40 AM Baldwin County Deputy Nicholas James stopped the vehicle that Mr. Myers was driving because he noticed that the registered owner of the vehicle had an outstanding bench warrant from the municipal court of Elberta, Alabama for failure to appear in court on a misdemeanor charge.

15.     Baldwin County Deputy Jesse Powell arrived shortly thereafter at the scene of the stop and Mr. Myers was taken into custody without incident.

16.     Neither Deputy James nor Deputy Powell reported that Mr. Myers was intoxicated or that they smelled the odor of alcohol on his breath, or that he was behaving like he was intoxicated, or driving erratically.

17.     Neither officer conducted a field sobriety test nor made Mr. Myers blow into a balloon to evaluate his alcohol level since neither had probable cause to do so, nor did either deputy cite Mr. Myers for any alcohol-related offense.

18.     However, according to records provided by defendants, upon Mr. Myers' arrival at approximately 10:00 at the Foley City Jail, Mr. Myers would not be able to bond out of jail for 16 hours even though his bond was only $500.

17.    Although never cited for any alcohol related offense by either the Baldwin County deputies or Foley city jailers Gouveia, Bailey, and Brower, Mr. Myers was placed on a "16-hour hold" by said jailers ostensibly for "safety" and "liability" reasons before he would be allowed to post bond.

18.    Booking records provided to the Plaintiff show that Mr. Myers informed the Foley city jailers during booking process that he suffered from heart disease and high blood pressure and alcoholism. However, proper medical screening conducted by qualified medical personnel or physician was never conducted on Mr. Myers, even though Nurse Rosi was present at the jail during Mr. Myers' booking process.

19.    On information and belief, upon being booked into jail, Mr. Myers told the booking officers that he did not have his blood pressure medication with him but in spite of this notifying said jail officials, his blood pressure was not taken during his booking even though Nurse Rosi was present at the jail, nor at any time during the 21 hours from his admission to the jail on February 26th until he was found dead on February 27th.

20.    After booking Mr. Myers was placed into a holding cell #3 with another inmate, who eventually bonded out, then another inmate was placed into the holding cell #3 with Mr. Myers that evening.

21.    According to state and federal laws, and the U.S. Constitution, the above-named Defendants were responsible for the health and safety of Mr. Myers as a pretrial detainee upon his being booked into the Foley city jail on the morning of February 26, 2023.

22.    However, none of the above Defendants, including the named Foley jail staff members or medical staff members gave Mr. Myers medications, took vital signs, or properly monitored him at any time his admission to the jail on February 26th until he was found dead on February 27th even though he had informed them that he had chronic medical conditions of high blood pressure, alcoholism, and heart disease.

23.    On two least separate occasions, on the evening of February 26th, Mr. Myers family members called or came by the jail to bond him out but were not allowed to bond Mr. Myers out.

24.    By the time Mr. Myers was found at approximately 7:00 A.M. he was cold and stiff, and rigor mortis had already set in on most of his body.

25.    On information and belief, Mr. Myers had died approximately 5 hours earlier before his unresponsive body was discovered by the next shift.

26.    None of the Foley city jailers or staff nor any jail medical staff could provide emergency response personnel with a medical history on Mr. Myers during

the time he was incarcerated in the Foley city jail from February 26[th,] 2023 until the time of his death on February 27th 2023.

27.     The jail records reflect that no medical monitoring or assessment whatsoever was ever taken by the 1st shift, 3rd shift, and mid shift corrections officers named above or any medical personnel present at any time, nor was any monitoring and assessments made for symptom progression at any time from the time that Mr. Myers booked into the Foley jail on the morning of February 26th until his cold body was found on the morning of February 27.

28.     From February 26[th,] 2023 and February 27th 2023, Mr. Myers' health deteriorated while he was incarcerated in the Foley city jail until he became gravely ill and in serious medical need of emergency treatment to save his life which he never received.

29.     The above-named defendants were deliberately indifferent to Mr. Myers serious medical needs by their delay and denial emergency medical treatment, and he died February 27, 2023 because of said indifference. In fact, the above-named defendants did not monitor or check Mr. Myers breathing at all until many hours after his death when rigor mortis had already set up in his face, extremities, and over much of his body.

30.     On information and belief, sometime on the morning of February 27, 2023, Mr. Myers medical condition became so grave and life threatening and he

had serious need of emergency hospitalization, and that his death was imminent if he did not receive medical treatment that only could be provided by emergency hospitalization.

31. As a result of cost-cutting measures put into place, the Defendants knowingly put the lives of inmates like Mr. Myers at risk, due to understaffing, and untrained corrections officers, and medical personnel.

32. The cost reduction in the numbers of professionally trained corrections officers and medical personnel at the Foley city jail, directly contributed to and caused the delay and denial of emergency medical treatment that led to Mr. Myers death.

33. Between February 26th, 2023 and February 27th 2023 Mr. Myers' chronic medical conditions became life threatening because of their not being adequately monitored and treated by the Foley city jail staff and medical personnel, who delayed and denied him the emergency medical treatment to save his life.

34. However, it was not until 7 A.M. on the morning of February 27th that Mr. Myers was found unresponsive in his cell, when in fact, rigor mortis had already set in over much of his body.

35. Plaintiff is informed and believes that Mr. Myers was so sick and in such serious need of emergency medical treatment in the early morning hours of February 27, 2023, due to the lack of adequate monitoring and treatment of his

chronic conditions, by jail corrections officers and medical personnel, that his condition had become terminal and emergency medical care would have been fruitless.

36.     Because of this, Plaintiff is informed and believed that the above-named defendant correction officers and medical staff on duty at the time never started CPR or resuscitative efforts on Mr. Myers upon finding him "unresponsive" in his jail cell because rigor mortis had already set in over much of his body, his lips were blue, and his body was cold.

37.     Neither an immediate nor proper medical assistance and emergency transfer to a hospital took place during Mr. Myers physical health emergency at Foley city jail due to Foley, Hellmich, and Bullock's underfunding of the police department and the jail which led to understaffing of correction officers and medical staff and potential lifesaving emergency hospitalization for inmates undergoing medical emergencies such as Mr. Myers.

38.     Having inadequately or underfunded the Foley city jail sufficiently to provide for adequate medical care of inmates, but more so to sufficiently provide for the serious medical needs of the inmates needing emergency medical care, Foley, Hellmich, and Bullock's actions through their contractors, CMP, Jail Physician, Nurse Rosi, and 2nd Jail Nurse are causally connected to and directly

responsible for the inadequate and below community standard medical care of inmates at the Foley city jail.

39.    Plaintiff is informed and believes that defendants Foley, Hellmich, Bullock, and defendants CMP, Jail Physician, Nurse Rosi, and 2nd Jail Nurse and their agents, servants and employees named above at the Foley city jail manage medical treatment of inmates with the goal of reducing costs incurred for inmate emergency care and treatment rather than providing adequate inmate care.

40.    Foley, Hellmich, Bullock, CMP, Jail Physician, Nurse Rosi, and 2nd Jail Nurse's unwritten agreement to reduce costs at the Foley city jail resulted in the delay and denial of emergency medical treatment for inmates at the Foley city jail, including Mr. Myers, which ultimately led to the death of Mr. Myers.

41.    On information and belief defendants Foley, Hellmich, Bullock, Carnley, Carnley , Dearing, and Phillips, unwritten policy of understaffing and inadequate training of corrections officers Gouveia, Bailey, Williams, Ash, and Brower and other jail employees was to avoid emergency hospitalization costs of inmates needing immediate hospitalization and treatment by delaying or denying emergency treatment to inmates such as Myers, suffering from complications of alcoholism, high blood pressure, and heart disease including those inmates whose chronic conditions such as Myers are aggravated when not treated, leading to life threatening conditions.

42.    On information and belief saving costs of emergency medical hospitalization and treatment of Mr. Myers was the over-riding concern for the named defendants including Foley, Hellmich, Bullock, Carnley, Carnley , Dearing, and Phillips, in their delay and denial of getting Mr. Myers emergency medical treatment and their deliberate indifference to his serious medical needs.

43.    The above named defendants Foley, Hellmich, Bullock, Carnley, Dearing, and Phillips, themselves, or by and through their agents, servants, and employees under their supervision and direction, including defendants Gouveia, Bailey, Williams, Ash, Brower, and CMP, Jail Physician, Nurse Rosi, and 2nd Jail Nurse knew or should have known of Mr. Myers chronic medical conditions described above, and that if inadequately treated or left untreated, Mr. Myers would become gravely ill and in serious medical need for emergency hospitalization and medical treatment but were deliberately indifferent to that need by delaying and denying said emergency hospitalization and treatment to him ultimately leading to his death.

## General Allegations

44.    Said Defendants, at all times material hereto, either personally or through an agent or representative:

  a.    acted negligently and/or wantonly regarding Mr. Myers serious medical needs including the training of jail and medical staff.

b.  acted with deliberate indifference to Mr. Myers serious medical needs in violation of 42 U.S.C. § 1983 including the training of jail and medical staff.

c.  acted with deliberate indifference to Mr. Myers health and safety in violation of 42 U.S.C. § 1983 including the training of jail and medical staff.

d.  acted negligently and/or wantonly by violating known policies and procedures regarding the care and treatment of prisoners, especially monitoring, and managing chronic illnesses including the training of jail and medical staff.

e.  acted negligently and/or wantonly by delaying and denying life-saving emergency medical treatment including the training of jail and medical staff.

f.  acted negligently and/or wantonly by breaching the standard of care for healthcare providers at facilities such as the Foley city jail including the training of jail and medical staff.

g.  acted with deliberate indifference to Mr. Myers constitutional rights to be free from cruel and unusual punishment including the training of jail and medical staff.

h.  acted with negligent and/or wanton disregard for Mr. Myers constitutional rights to be free from cruel and unusual punishment including the training of jail and medical staff

45.  As a direct and proximate cause of said Defendants' tortious,

negligent, and/or wanton conduct, Mr. Myers died in custody.

### **Count I – Violation of Fourteenth Amendments**
### **42 U.S.C. § 1983**
### **Deliberate Indifference to Serious Medical Needs**

46.  Plaintiff brings this count pursuant to 42 U.S.C. § 1983, *et seq.* for

violations of Mr. Myers 's clearly established constitutional right to receive adequate

medical care and treatment while in custody provided by the Fourteenth Amendment of the United States Constitution.

## Gouveia, Bailey, Williams, Ash, and Brower

47. Defendants Gouveia, Bailey, Williams, Ash, and Brower acting under the color of state law, within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Mr. Myers serious medical needs in that they had knowledge of an urgent medical condition that would be exacerbated by delay and refusal, yet unreasonably, unjustifiably and with deliberate indifference delayed and refused obtaining the medical treatment which Mr. Myers desperately needed.

48.    Defendants Gouveia, Bailey, Williams, Ash, and Brower acting under the color of state law, within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Mr. Myers serious medical needs in that they had knowledge of his chronic serious medical conditions of alcoholism, high blood pressure, and heart disease but failed and refused to obtain medical treatment for Mr. Myers and failed to monitor said conditions from February 26, 2023, until February 27, 2023, administer necessary medications for his high blood pressure and heart disease, or obtain emergency medical treatment until after his death.

49.    It is clearly established law that a jail official violates an inmate's Fourteenth Amendment right to receive adequate medical treatment while in

custody if he or she acts with deliberate indifference to the serious and/ or urgent medical needs of an inmate in pretrial confinement. An abundance of prior case law made it clear that an official acts with deliberate indifference when he or she knows or has reason to know that a prisoner with chronic medical conditions, is experiencing a serious need for emergency medical care, but fails and refuses to obtain medical treatment for the detainee. The case law also had been clearly established before this case arose that an official acts with deliberate indifference when he or she intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay. In this case, Mr. Myers had a history of chronic alcoholism, high blood pressure, and heart disease which said defendants were had notice and knowledge of.

50.    As a direct and proximate result of Defendants Gouveia, Bailey, Williams, Ash, and Brower actions, Mr. Myers became gravely ill and in serious medical need of emergency hospitalization and treatment to the degree that his condition became life threatening, and he ultimately died.

### **Foley, Hellmich, Bullock, and Carnley**

51.    Defendants Foley, Hellmich, Bullock, and Carnley  acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, inadequately or underfunded the Foley police department and the city jail resulting in pre-trial

detainees and inmates, such as Mr. Myers in custody at the jail, receiving less than or inadequate medical care than that common in the community, including emergency medical care for serious medical needs.

52.    The decision by Foley, Hellmich, Bullock, and Carnley was pursuant to a long-standing practice of inadequately or underfunding the Foley police department and city jail. The inadequate funding caused medical treatment of the inmates at the jail to be delayed or denied including emergency medical treatment to inmates, like Mr. Myers, with serious medical needs that went untreated to avoid incurring expensive charges for said treatment. The unwritten policy and practice to avoid expensive emergency medical costs was the moving force behind said delay and denial of emergency medical treatment for Mr. Myers serious medical needs from February 26, 2023, until February 27, 2023 and the violation of Mr. Myers clearly established rights under the Fourteenth Amendment to the U.S. Constitution.

53.    Foley, Hellmich, Bullock, and Carnley were deliberately indifferent to Mr. Myers serious medical needs as an inmate at the jail as a result of their policy and custom of inadequately funding the Foley city jail resulting in the delay or denial of proper monitoring, medications, and medical care being received by Mr. Myers at the  Foley city jail which violated Mr. Myers clearly established

rights to adequate medical treatment while in custody under the Fourteenth Amendment of the U. S. Constitution.

54.    As a result of Foley, Hellmich, Bullock, and Carnley's deliberate indifference to Mr. Myers serious medical needs as an inmate at the Foley city jail, Mr. Myers experienced severe pain, suffering, and death thereby depriving Mr. Myers of his clearly established rights under the Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

## Dearing, and Phillips

55.    Defendants Dearing, and Phillips, as policy makers for the  Foley city jail, and acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Mr. Myers serious medical needs in that they had knowledge of Mr. Myers chronic physical health conditions requiring emergency medical treatment but violated their own written jail policies and procedures authorizing emergency medical treatment for inmates with serious medical needs by understaffing of jail and medical personnel, and authorizing the delay or denial of  emergency medical treatment for inmates including Mr. Myers in accordance with their unwritten policy and deal with CMP to manage and cut expensive medical and hospital costs incurred on behalf of inmates at the jail.

56.    The decision by Dearing, and Phillips to understaff jail and medical personnel and authorize the delay and denial of expensive emergency medical

treatment for Mr. Myers serious medical condition was pursuant to a long standing unwritten policy and practice to avoid expensive and budget absorbing costs of jail and medical staffing and emergency hospitalization and treatment of inmates at the Foley city jail by delaying or denying emergency medical treatment to inmates, like Mr. Myers with serious medical needs in order to avoid incurring charges for said treatment.

57.    The unwritten policy and practice to understaff jail and medical personnel and avoid emergency medical costs was the moving force behind said delay and denial of emergency medical treatment for Mr. Myers serious medical needs from February 26, 2023, until February 27, 2023, and the violation of Mr. Myers rights under the Fourteenth Amendment to the U.S. Constitution.

58.    As a result of Bullock, Dearing, and Phillips's deliberate indifference to Mr. Myers serious medical needs for emergency treatment Mr. Myers experienced severe pain, suffering, and death thereby depriving Mr. Myers of his clearly established rights to adequate medical treatment while in custody under the Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

59.    The delay and/or denial of emergency medical treatment to Mr. Myers for the above-described chronic medical conditions is directly attributable to

Dearing, and Phillips unwritten and long-standing policy to cut costs and medical expenses at the Foley city jail.

### CMP, Jail Physician, Nurse Rosi, and 2nd Jail Nurse

60.     Defendants CMP and its agents, servants, or employees Jail Physician, Nurse Rosi, and 2nd Jail Nurse were under contract with defendant Foley, Hellmich, Bullock, and Carnley  to provide medical treatment to inmates at the Foley city jail, and acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Mr. Myers serious medical needs in that they had knowledge of Mr. Myers physical health condition requiring emergency medical treatment but violated their own protocols and procedures authorizing emergency medical treatment for inmates with serious medical needs such as Mr. Myers by delaying or denying emergency medical treatment for her in accordance with the unwritten policy and deal between CMP, and its agents, servants, or employees Jail Physician, Nurse Rosi, and 2nd Jail Nurse, and Foley, Hellmich, Bullock, and Carnley to avoid expensive medical and hospital costs incurred on behalf of inmates at the jail.

61.     The decision by CMP, and its agents, servants, or employees Jail Physician, Nurse Rosi, and 2nd Jail Nurse to delay and deny expensive emergency medical treatment for Mr. Myers serious medical condition was pursuant to a long standing unwritten policy and practice to avoid costs of medical treatment at the

Foley city jail  by delaying or denying medical treatment to inmates, like Mr.

Myers, with serious medical needs in order to avoid incurring expensive

hospitalization charges for said treatment. The unwritten policy and practice to

avoid emergency medical costs was the moving force behind said delay and denial

of emergency medical treatment for Mr. Myers serious medical needs from

February 26, 2023, until February 27, 2023 and the violation of Mr. Myers rights

under the Fourteenth Amendment to the U.S. Constitution.

62.    As a result of CMP, and its agents, servants, or employees Jail

Physician, Nurse Rosi, and 2nd Jail Nurse, deliberate indifference to Mr. Myers

serious medical needs for emergency treatment Mr. Myers experienced severe pain

and suffering from February 26, 2023, until February 27, 2023 when Mr. Myers

died in custody, thereby depriving Mr. Myers  of his clearly established rights as a

prisoner under the Eighth Amendment to the Constitution of the United States in

violation of 42 U.S.C. § 1983.

62.    The delay and/or denial of emergency medical treatment to Mr. Myers

for the above-described serious conditions is directly attributable to CMP, and its

agents, servants, or employees Jail Physician, Nurse Rosi, and 2nd Jail Nurse's

unwritten policy to avoid medical costs and expenses at the Foley city jail.

### Count II – Violation of Fourteenth Amendment

### 42 U.S.C. § 1983
### Deliberate Indifference to Health and Safety

63.     Defendants Foley, Hellmich, Bullock, Carnley , Dearing, Phillips, and CMP, and its agents, servants, or employees Jail Physician, Jail Nurse Rosi, and 2nd Jail Nurse, acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Mr. Myers health and safety while incarcerated as a pre-trial detainee in the Foley city jail including both his serious medical needs and the conditions of his confinement from February 26, 2023, until February 27, 2023.

### Foley, Hellmich, Bullock, and Carnley

64.     Defendants Foley, Hellmich, Bullock, and Carnley , acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, inadequately or underfunded the Foley city jail resulting in pre-trial detainees and inmates, such as Mr. Myers in custody in the jail, receiving less than or inadequate medical care than that common in the community, including emergency medical care for serious medical needs.

65.     Defendants Foley, Hellmich, Bullock, and Carnley  knew or had reason to know that if provision of medical services such as monitoring of and administering proper medication to chronically ill inmates, such as Mr. Myers, were delayed or denied as a result of their unwritten policy and custom of inadequately or underfunding the jail for the provision of medical services, in with the foreseeable dangerous consequences for inmates with chronic medical

conditions such as Mr. Myers, who needed proper medications and constant

monitoring and/or emergency medical care.

66.    Defendants Foley, Hellmich, Bullock, and Carnley  was deliberately

indifferent to the health and safety of Mr. Myers at the Foley city jail. The

inadequate monitoring, medication, and medical care received by Mr. Myers at the

Foley city jail violated Mr. Myers clearly established rights as a detainee to receive

adequate medical care while in custody established under the Fourteenth

Amendment of the U. S. Constitution.

67.    As a result of the Defendants Foley, Hellmich, Bullock, and Carnley

's deliberate indifference to Mr. Myers health and safety at the Foley city jail, Mr.

Myers became gravely ill and in serious medical need of emergency hospitalization

and treatment to the degree that his condition became life threatening, and he

ultimately died from the delay and denial of proper medication, monitoring and

medical treatment to adequately treat his chronic medical conditions from February

26, 2023, until February 27, 2023, thereby depriving Mr. Myers of his clearly

established rights as a pretrial detainee to receive adequate medical care while in

custody under the Fourteenth Amendment to the Constitution of the United States

in violation of 42 U.S.C. § 1983.

68.    The decision of Defendants Foley, Hellmich, Bullock, and Carnley 's

to inadequately fund the Foley city jail was pursuant to a long standing policy to

underfund or inadequately fund the Foley police department and its city jail which led to poor jail conditions, understaffing of jail and medical personnel, and inadequate health and safety conditions at the jail, poor medical screening of inmates admitted to the jail, inadequate jailer training, allowing untrained and/or poorly trained corrections officers to make decisions regarding inmate medical treatment, and denying and delaying necessary medical care to inmates, such as Mr. Myers with chronic and/or with serious medical needs, in order to avoid incurring expensive hospitalization and medical expenses and charges for said medical treatment.

69.    As a result of Defendants Foley, Hellmich, Bullock, and Carnley 's inadequate funding of the Foley city jail, Mr. Myers did not receive proper medical monitoring, medication, or emergency medical treatment for his chronic conditions, and his condition deteriorated from February 26, 2023, until February 27, 2023, to such a point that Mr. Myers became gravely ill and in serious medical need of emergency hospitalization and treatment to the degree that his condition became life threatening, and he ultimately died.

70.    The denial of adequate medicine and monitoring of Mr. Myers above-described chronic medical conditions are directly attributable and casually connected to Defendants Foley, Hellmich, Bullock, and Carnley 's long standing policy of inadequately funding the Foley police department and its jail.

71.    As a proximate result of said inadequate funding, thereby Mr. Myers was deprived of his clearly established rights as a detainee to adequate emergency medical treatment under the Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. § 1983.

### Dearing and Phillips

72.    Defendants Dearing and Phillips, acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Mr. Myers health and safety, including both his serious medical needs and the conditions of his confinement, in that they and/or the staffs under their supervision, knew or should have known Mr. Myers chronic medical condition would deteriorate as a result of the understaffing of jail and medical personnel but failed to adequately staff jail and medical personnel to monitor his conditions, administer proper medication, or provide for emergency medical care, and delayed and/or denied said actions until Mr. Myers health deteriorated from February 26, 2023, until February 27, 2023, and became gravely ill and in serious medical need of emergency hospitalization and treatment to such a degree that his condition became life threatening, and he died.

73.    The decisions of Defendants Dearing and Phillips to delay or deny Mr. Myers adequate medicine to manage his known chronic medical conditions of alcoholism, high blood pressure, and heart disease were pursuant to an unwritten

policy of underfunding and understaffing of jail and medical personnel, and delay or deny inmates such as Mr. Myers adequate medical care by avoiding medical and hospital treatment expenses at the Foley city jail, in violation of their own written policies and procedures.

74. Defendants Dearing and Phillips unwritten policy included inadequate medical screening of inmates admitted to the jail, inadequate jailer training, allowing untrained and/or poorly trained corrections officers or jailers to make decisions regarding medical treatment, and denying and delaying necessary medical care to pretrial detainees and inmates with serious medical needs to avoid incurring charges for said medical treatment.

75. As a result of these defendants' decisions to delay and/or deny adequate medicine and monitoring of Mr. Myers above-described chronic medical conditions, Mr. Myers experienced severe pain, suffering and eventual death, thereby depriving Mr. Myers of his clearly established rights as a pretrial detainee in custody to receive adequate medical care under the Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

76. The unwritten policy and practice to avoid emergency medical costs was the moving force behind said delay and denial of emergency medical treatment for Mr. Myers serious medical needs from February 26, 2023 until

February 27, 2023., and the violation of Mr. Myers's rights under the Fourteenth Amendment to the U.S. Constitution.

### CMP, Jail Physician, Nurse Rosi, and 2nd Jail Nurse

77.    Defendants CMP and its agents, servants, or employees Jail Physician, Nurse Rosi, and 2nd Jail Nurse, acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Mr. Myers health and safety, including both his serious medical needs and the conditions of his confinement, in that they and/or the staffs under their supervision failed to properly monitor his chronic conditions, administer proper medication, and provide lifesaving emergency medical care.

78.    Said defendants knew or had reason to know of Mr. Myers chronic conditions, and need for monitoring and proper medications for these conditions, but failed to monitor and/or treat these conditions, and as a result of their delay and denial of said monitoring and treatment, Mr. Myers experienced a serious need for emergency medical care and ultimately died. Said defendants' actions violated Mr. Myers clearly established rights under the Fourteenth Amendment under the U.S. Constitution.

79.    The decision by Defendants CMP and its agents, servants, or employees Jail Physician, Nurse Rosi, and 2nd Jail Nurse to delay and deny expensive emergency medical treatment for Mr. Myers serious medical conditions

was pursuant and directly attributable to a long standing unwritten policy at the Foley city jail to underfund medical staffing, and avoid costs of expensive medical treatment by delaying or denying said emergency hospitalization and medical treatment to inmates like Mr. Myers with chronic and serious medical needs. The unwritten policy and practice to avoid emergency medical costs was the moving force behind said delay and denial of emergency medical treatment for Mr. Myers serious medical needs from February 26, 2023 until February 27, 2023, and the violation of Mr. Myers clearly established rights under the Fourteenth Amendment to the U.S. Constitution by Defendants CMP and its agents, servants, or employees Jail Physician, Nurse Rosi, and 2nd Jail Nurse.

80.    As a result of Defendants CMP and its agents, servants, or employees Jail Physician, Nurse Rosi, and 2nd Jail Nurse deliberate indifference to Mr. Myers health and safety, Mr. Myers became gravely ill and in serious medical need of emergency hospitalization and treatment. From February 26, 2023 until February 27, 2023.

81.    The delay and/or denial of emergency medical treatment to Mr. Myers for the above-described serious conditions is directly attributable to Defendants CMP and its agents, servants, or employees Jail Physician, Nurse Rosi, and 2nd Jail Nurse, along with Foley, Hellmich, Bullock, and Carnley 's unwritten policy to reduce costs at the Foley city jail by underfunding medical staff, and avoiding

expensive emergency hospitalization and medical treatment for inmates like Mr.

Myers suffering chronic conditions with a serious medical needs for said

emergency hospitalization and medical treatment thereby avoiding the costs and

expenses of said treatment.

82.    The decisions of these individual defendants to delay or deny Mr.

Myers adequate medical treatment to manage his known chronic medical

conditions were pursuant to one or more policies or customs at the Foley city jail.

These policies and customs included inadequate medical screening of inmates

admitted to the jail, inadequate medical staff training, allowing untrained and/or

poorly trained jail and medical staff to make decisions regarding medical

treatment, and denying and delaying necessary medical care to pretrial detainees

and prisoners with serious medical needs to avoid incurring expensive costs and

charges for said medical treatment.

83.    As a result of these defendants' decisions to delay and/or deny

adequate medicine and monitoring of Mr. Myers above-described chronic medical

conditions, Mr. Myers became gravely ill and in serious medical need of

emergency hospitalization and treatment and ultimately died, thereby depriving

Mr. Myers of his clearly established rights as a pretrial detainee to receive

adequate medical treatment and emergency medical care under Fourteenth

Amendments to the Constitution of the United States in violation of 42 U.S.C. §
1983.

84.    The unwritten policy and practice to avoid emergency medical costs
was the moving force behind these defendants' deliberate indifference to Mr.
Myers health and safety, the delay and denial of emergency medical treatment for
Mr. Myers serious medical needs from February 26, 2023 until February 27, 2023,
and the violations of Mr. Myers rights under the Fourteenth Amendment to the
U.S. Constitution.

## Count III – State Law Negligence and Wantonness

85.    Defendants Dearing, Phillips, Gouveia, Bailey, Williams, Ash, and
Brower and its agents, servants, or employees Jail Physician, Nurse Rosi, and 2nd
Jail Nurse, had a duty to secure and provide medical treatment for Mr. Myers while
a pretrial detainee under their care, custody and/or control at the Foley city jail.

### Dearing, Phillips, Gouveia, Bailey, Williams, Ash, and Brower

86.    Defendants Dearing, Phillips, Gouveia, Bailey, Williams, Ash, and
Brower breached that duty by negligently and/or wantonly failing and refusing to
secure and provide proper medication, monitoring, and emergency medical care
treatment for Mr. Myers before and after gravely ill.

87.    As a direct and proximate result of the Defendants Dearing, Phillips,
Gouveia, Bailey, Williams, Ash, and Brower above-described actions and

omissions, Mr. Myers suffered experienced a medical emergency which led to his death on February 27, 2023.

### CMP, Jail Physician, Nurse Rosi, and 2nd Jail Nurse

88.    Defendants CMP and its agents, servants, or employees Jail Physician, Nurse Rosi, and 2nd Jail Nurse breached that duty by negligently and/or wantonly failing and refusing to secure and provide proper medication, monitoring, and emergency medical care treatment for Mr. Myers when he became gravely ill and in serious medical need of emergency hospitalization and treatment.

89.    As a direct and proximate result of the Defendants CMP and its agents, servants, or employees Jail Physician, Jail Nurse Rosi, and 2nd Jail Nurse actions and omissions, Mr. Myers experienced a medical emergency which ultimately led to his death on February 27, 2023.

### Count IV – State Law Wrongful Death

90.    Defendants Foley, Hellmich, Bullock, Carnley, Dearing, Phillips, CMP, Jail Physician, Nurse Rosi, and 2nd Jail Nurse, separately and severally, caused the wrongful death of Mr. Myers on February 27, 2023, as contemplated by Alabama Code § 6-5-410.

91.    Said Defendants, separately and severally, owed a duty to Mr. Myers to provide him with a standard of medical care of the degree of diligence and skill common in the community and applicable to inmates such as Mr. Myers

experiencing the effects of unmonitored and untreated chronic illnesses of high blood pressure, heart disease, and alcoholism and other medical conditions, to make sure jail and medical staffs were trained adequately regarding the proper care of such patients and that adequate policies and procedures, and medical protocols regarding the proper care of such patients were in place but more importantly being followed.

92.    This standard of care applicable to all said defendants required, among other things, Mr. Myers condition to be closely monitored under medical supervision, that adequate medications be administered to Mr. Myers, and that referral of Mr. Myers for emergency medical or other appropriate treatment be authorized and ordered once his condition became life threatening, including having adequate medications available and professionally trained personnel properly on hand to closely monitor once his condition deteriorated.

### **Foley and Hellmich**

93.    Defendant Foley and Hellmich's inadequate funding of the Foley city jail had the foreseeable result that the standard of care by healthcare providers would be breached at the Foley city jail, and in doing so violated their statutory duty under Alabama law to attend to the medical needs of pretrial detainees and prisoners in care, custody, and control of the Foley city jail resulting in inadequate and substandard medical care such as failure to train jail and medical staffs, failing

to take proper a medical history from Mr. Myers, failing to closely monitor Mr.

Myers 's deteriorating condition, failing to administer proper medications for Mr.

Myers's chronic conditions, delaying and denying emergency medical care

common in the community to Mr. Myers after his condition became gravely ill and

life threatening on or about February 27, 2023 when he was in need of emergency

hospitalization and medical treatment which ultimately led to his death.

94.    Defendants Foley and Hellmich's negligent and/or wanton inadequate

funding of the Foley  city jail was the moving force behind the breaches in duty of

care owed to Mr. Myers  by jail and medical staffs and was the proximate cause of

her death on or about December 22, 2022, a foreseeable result of said defendants

Foley  and Hellmich 's negligent and/or wanton inadequate funding of the Foley

city jail,

### Bullock, Carnley, Dearing, Phillips,

95.    Defendants Bullock , Carnley, Dearing, Phillips, Gouveia, Bailey,

Williams, Ash, and Brower specifically violated the standard of care for healthcare

providers, breached their duty of care to Mr. Myers, violated state and federal law,

and their own policies and procedures, and in doing so violated their statutory duty

under Alabama law to attend to the medical needs of pretrial detainees such as Mr.

Myers, in their care, custody, and control at the Foley city jail and/or by failing to

train the named jail correctional officers and medical staffs, to take proper medical

histories from pretrial detainees like Mr. Myers, failing to train to them to monitor

Mr. Myers chronic conditions, failing to train them to administer proper

medications for Mr. Myers chronic conditions, and training them to delay and deny

emergency medical care common in the community to Mr. Myers after he became

gravely ill on or before February 27, 2023 and in need of emergency medical

attention.

96.    Said Defendants' negligent and/or wanton violations enumerated

above resulted in a breach of the standard of care owed to Mr. Myers as a pretrial

detainee, and proximately caused his death on or about February 27, 2023, a

foreseeable result of said defendants negligent and/or wanton conduct.

### <u>CMP, Jail Physician, Nurse Rosi, and 2nd Jail Nurse</u>

97.    Defendants CMP and its agents, servants, or employees Physician,

Nurse Rosi, and 2nd Jail Nurse, violated standard of care for healthcare providers

and or breached or violated their duty of care, and violated their own protocols,

and in so doing failed to attend to the medical needs of Mr. Myers, who was in the

care, custody, and control of the Foley city jail, by failing to train jail and medical

staffs, failing to take proper a medical history from Mr. Myers, failing to properly

monitor Mr. Myers's chronic medical conditions, failing to administer and monitor

proper medications for Mr. Myers's chronic conditions, delaying and denying

emergency medical care common in the community to Mr. Myers after his

condition became life threatening and he became gravely ill on or before February 27, 2023  and in need of emergency medical attention.

98.    Said Defendants' negligent and/or wanton violation of the duties of care owed to Mr. Myers proximately caused his death on or about February 27, 2023, a foreseeable result of said defendants' and their agents, servants, and employees negligent and/or wanton conduct.

## Count V: Inadequate Medical Care - 42 U.S.C. § 1983
### (Against Defendants Hellmich, Bullock, Carnley, Dearing, Phillips, Gouveia, Bailey, Williams, Ash, and Brower in Their Individual Capacities)

99.    Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

100.    Defendants Hellmich, Bullock, Carnley, Dearing, Phillips, Gouveia, Bailey, Williams, Ash, and Brower's acting under color of state law, were deliberately indifferent to Mr. Myers serious medical needs while he was incarcerated as a pretrial detainee at the Foley City Jail.

101.    Defendants knew or should have known of Mr. Myers 's urgent medical conditions of heart disease, high blood pressure, lack of medication, combined with his history of alcoholism, created the potential for cardiac arrythmia, which required timely and adequate medical intervention.

102.   Despite the clear and obvious need for medical care, said Defendants delayed or denied treatment, resulting in the rapid deterioration of Mr. Myers health and, ultimately, his death.

103.   Defendant Hellmich failed to ensure the implementation of adequate medical protocols at the Foley City Jail, and Defendant Bullock, in his capacity as a policymaker, failed to address systemic deficiencies that directly contributed to the deprivation of Mr. Myers 's rights.

104.   Further, said Defendants' unwritten customs and practices violated their own written protocols, rules, and regulations for treating detainees with chronic medical issues, such as those exhibited by Mr. Myers, demonstrating a deliberate and willful disregard for his constitutional rights.

105.   This deliberate indifference violated Mr. Myers 's constitutional right to adequate medical care under the Fourteenth Amendment to the United States Constitution.

106.   As a direct and proximate result of Defendants' actions and inactions, Mr. Myers experienced gravely ill and died without any medical intervention, monitoring, or treatment by said defendants whatsoever on about February 27, 2023.

**Count VI: Deprivation of Life Without Due Process - 42 U.S.C. § 1983**

**(Against Defendants Bullock, Carnley, Dearing, Phillips, Gouveia, Bailey, Williams, Ash, and Brower in Their Individual Capacities)**

107.   Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

108.   Defendants Bullock, Carnley, Dearing, Phillips, Gouveia, Bailey, Williams, Ash, and Brower's deliberate indifference to Mr. Myers serious medical needs, including the delay and denial of emergency treatment, directly caused his death.

109.   By depriving Mr. Myers of access to medical care, Defendants violated his constitutional right to life and liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution.

110.   Defendants Bullock Carnley, Dearing, and Phillips, in their capacity as a policymakers, knowingly maintained the unwritten customs and practices that undermined detainee care and violated established medical treatment protocols which contributed directly to Mr. Myers death.

111.   This deprivation of life was not the result of negligence alone but was a result of willful and deliberate disregard for his basic human rights.

112.   As a direct and proximate result of Defendants' conduct, Mr. Myers lost his life, and his estate has suffered damages.

**Count VII: Supervisory Liability - 42 U.S.C. § 1983**

**(Against the Foley, Hellmich, Dearing, Carnley, Dearing Phillips Gouveia, and Williams, in Their Individual Capacities)**

113.    Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

114.    Defendants Foley, Hellmich, Dearing, Carnley, Dearing Phillips Gouveia, and Williams, in their roles as supervisors, were responsible for ensuring that jail staff and medical personnel were adequately trained and supervised to provide necessary medical care to inmates.

115.    Said Defendants knew or should have known about systemic deficiencies in training, supervision, and policies that created a substantial risk of harm to pretrial detainees, including Mr. Myers.

116.    Despite this knowledge, Defendants failed to implement or enforce policies and training procedures necessary to prevent the deliberate indifference exhibited by jail staff and medical personnel in this case.

117.    Defendants' failures violated their own internal rules and protocols for the supervision and training of jail staff and medical personnel, further evidencing deliberate indifference to detainees and Mr. Myers medical needs.

118.    The failure to train and supervise was a proximate cause of the deliberate indifference to Mr. Myers 's serious medical needs, resulting in his death.

**Count VIII: Negligent Supervision and Training - 42 U.S.C. § 1983**

**(Against Foley, Hellmich, Bullock, Carnley, Dearing Phillips Gouveia, and Williams,)**

119.   Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

120.   Defendants Foley, Hellmich, Bullock, Carnley, Dearing Phillips Gouveia, and Williams, had a duty to train and supervise jail staff to ensure that inmates received adequate medical care and treatment.

121.   Defendants breached this duty by failing to provide adequate training and supervision regarding the identification of chronic medical conditions and treatment of medical emergencies. Defendants' actions were negligent, incompetent, and unskillful, violating their duty of care to detainees.

122.   Defendants Foley, Hellmich, Bullock, Carnley, Dearing Phillips Gouveia, and Williams, further violated their own internal written rules and regulations requiring the proper training and supervision of jail staff and medical personnel to address detainees' medical needs.

123.   The lack of supervision and training resulted in a delay and denial of necessary medical care for Mr. Myers, causing his death.

124.   As a direct and proximate result of Defendants' negligence, Mr. Myers became gravely ill and eventually died on February 27, 2025 without any medical intervention whatsoever at any time for his chronic medical conditions while he was incarcerated in the Foley city jail.

**Count IX: Municipal Liability for Systemic Failures - 42 U.S.C. § 1983**

**(Against Foley)**

125.   Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

126.   Defendant Foley maintained policies, practices, and customs that prioritized cost-saving over the safety and well-being of detainees, including underfunding jail operations and medical care.

127.   These systemic failures created conditions that made it impossible for jail staff and medical personnel to provide adequate care for Mr. Myers.

128.   Foley's actions were pursuant to a long-standing practice of underfunding and understaffing the city jail as a cost saving measure with the foreseeable results that said practice would place the pretrial detainees' lives at risk by prioritizing these measures over the humane treatment of pretrial detainees such as Mr. Myers. who they had a statutory duty to protect and keep safe from harm while in their custody, which measures violated Mr. Myers clearly established 8th and 14th Amendment to the U.S. Constitutional rights to humane treatment and adequate medical care while incarcerated in the Foley city jail.

129.   The City's actions and inactions were a direct and proximate cause of Mr. Myers death, constituting a breach of its statutory duty to ensure the safety and well-being of individuals in its custody.

**Count X: Negligence in Emergency Medical Response - 42 U.S.C. § 1983**

**(Against Bullock, Carnley, Dearing, Phillips, Gouveia, Bailey, Williams, Ash, Brower, CMP, Jail Physician, Nurse Rosi, and 2nd Jail Nurse)**

130.   Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

131.   Defendants Bullock, Carnley, Dearing, Phillips, Gouveia, Bailey, Williams, Ash, and Brower owed Mr. Myers a duty to respond promptly and adequately to his medical emergencies while he was in their custody.

132.   Said Defendants breached this duty by failing to take and act on a proper medical history when Mr. Myers was admitted to the Foley city jail by failing to provide lifesaving medication, monitoring, and timely emergency medical care, including delaying and denying CPR and failing to transfer Mr. Myers to a hospital for emergency medical treatment before his condition became life threatening and at the time of his death.

133.   Said Defendants' actions were negligent, incompetent, and unskillful, violating their duty to provide timely medical assistance to detainees in life-threatening situations. These actions also contravened said Defendants' own written protocols and policies for handling medical emergencies.

134.   As a direct and proximate result of Defendants negligence, Mr. Myers gravely ill and died.

**Count XI: Monell Claim for Municipal Liability - 42 U.S.C. § 1983**
**(Against the Defendant Foley Hellmich, and Bullock in Their Individual**

**and Official Capacities)**

135.  Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

136.  At all times relevant to this Complaint, Defendants Foley, Hellmich, and Bullock maintained policies, customs, and practices that directly resulted in the deprivation of Mr. Myers constitutional rights under the Fourteenth Amendment to the United States Constitution.

137.  These policies, customs, and practices included, but were not limited to:

    A. Systematic underfunding of the Foley City Jail, resulting in the jail being understaffed and inadequate medical staffing and resources.

    B. Failure to establish and enforce policies to ensure inmates receive timely and adequate medical care.

    C. Prioritization of cost-saving measures over the health and safety of pretrial detainees.

    D. Failure to train and supervise jail staff and medical personnel on the recognition and treatment of serious medical conditions.

138.  Said Defendants were aware of the substantial risk of harm created by these policies and practices but failed to take appropriate corrective action, demonstrating deliberate indifference to the constitutional rights of individuals in their custody, including Mr. Myers.

139.   Said Defendants policies and practices were the moving force behind the deliberate indifference exhibited by jail staff and medical personnel, which directly caused Mr. Myers death.

140.   As a direct and proximate result of these policies, customs, and practices, Mr. Myers was denied the fundamental constitutional right to adequate medical care while in custody as a pretrial detainee, resulting in his death.

## <u>RELIEF SOUGHT</u>

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

A. Award Plaintiff compensatory damages against all Defendants, jointly and severally, in an amount to be determined by the jury, to compensate for the physical pain, suffering, mental anguish, and wrongful death of Mr. Myers, including medical expenses, funeral and burial expenses, and other related damages.

B. Award Plaintiff punitive damages against all individual Defendants in their individual capacities to punish and deter similar egregious, reckless, and wanton conduct in the future.

C. Enter a declaratory judgment that Defendants' policies, customs, and practices, including but not limited to their systemic underfunding of the Foley City Jail, deliberate indifference to medical care, and unconstitutional treatment of detainees, violated Mr. Myers 's rights under the Fourteenth Amendment to the United States Constitution.

D. Order Defendants to implement and enforce constitutional policies and procedures at the Foley City Jail to ensure adequate and timely medical care for detainees.

E. Require Defendants to adequately train all jail staff and medical personnel in proper medical response protocols for detainees with serious medical needs.

F. Mandate independent oversight and monitoring of medical care at the Foley City Jail.

G. Award Plaintiff reasonable attorneys' fees, expenses, and litigation costs pursuant to 42 U.S.C. § 1988, and any other applicable provisions of law.

H. Award Plaintiff pre- and post-judgment interest as allowed by law.

I. Grant any further relief that this Court deems just and proper.

J. The plaintiff demands a trial by jury on all issues so triable.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Dated: February 24, 2025                    Respectfully Submitted,

                                           */s/ Anthony J. Piazza*
                                           Anthony J. Piazza
                                           ASB-6593-A47A

                                           *Attorney for the Plaintiff*

ANTHONY PIAZZA, P.C.
P. O. Box 550217
Birmingham, AL  35255-0217
Phone (205) 617-6211
Email: anthonypiazza0326@hotmail.com

/s/Thomas Pilcher
Thomas Pilcher, PIL013
In his capacity as Administrator
of the Estate of Christopher
Robert Myers, Deceased

.

*Plaintiff*

THOMAS PILCHER, ESQ.
7208 Penbridge Avenue
Fairhope, AL 36533
Phone: (251) 298-3000
Email: jtp@pglawllc.com

SERVE DEFENDANTS AT THE FOLLOWING ADDRESSES:

CITY OF FOLEY, ALABAMA
407 E. Laurel Avenue
Foley, AL 36535

MAYOR RALPH HELLMICH
407 E. Laurel Avenue
Foley, AL 36535

CHIEF THURSTON BULLOCK
200 E Section Ave
Foley, AL 36535

DEPUTY CHIEF KEVIN CARNLEY
200 E Section Ave
Foley, AL 36535

JAIL CDR LARRY DEARING
200 E Section Ave
Foley, AL 36535

CHIEF C. O. NICOLE PHILLIPS
200 E Section Ave
Foley, AL 36535

SHIFT SUPV RAVEN WILLIAMS
200 E Section Ave
Foley, AL 36535

JAILER JOHN ASH
200 E Section Ave
Foley, AL 36535

JAILER LOUIS BROWER, JR.
200 E Section Ave
Foley, AL 36535

SHIFT SUPV RAVEN WILLIAMS
JAILER JOHN ASH
JAILER LOUIS BROWER, JR.

CORPORATE MEDICAL PROVIDER
200 E Section Ave
Foley, AL 36535

JAIL PHYSICIAN
200 E Section Ave
Foley, AL 36535

JAIL NURSE ROSI
200 E Section Ave
Foley, AL 36535

2nd JAIL NURSE
200 E Section Ave
Foley, AL 36535