```
        IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF ALABAMA
                   SOUTHERN DIVISION
```

THOMAS PILCHER,  
As Administrator of the  
Estate of Christopher Robert  
Myers, Deceased,  

    Plaintiff,   *   CIVIL ACTION NO. 25-00072-KD-B

vs.

CITY OF FOLEY, ALABAMA, *et al.*,

    Defendants.

## ORDER

This civil action was brought by Plaintiff Thomas Pilcher in his capacity as Administrator of the Estate of Christopher Robert Myers, who died in custody approximately twenty-one hours after being arrested and booked into the Foley City Jail. (See Doc. 19). Pending before the Court is the Foley Defendants'[1] motion to file exhibits to their motion to dismiss under seal. (Doc. 20). For the reasons set forth herein, the motion is **DENIED;** however, the **videos shall remain provisionally sealed** until further order of the Court.

---

[1] Defendants City of Foley, Alabama, Mayor Ralph Hellmich, Chief Thurston Bullock, Deputy Chief Kevin Carnley, Jail CDR Larry Dearing, Chief C.O. Nicole Phillips, Shift Supervisor Melanie Gouveia, C.O. Dante Bailey, Shift Supervisor Raven Williams, C.O. John Ash, and C.O. Louis Brower, Jr., collectively refer to themselves as the "Foley Defendants." (Doc. 20 at 1).

### I. Motion to Seal (Doc. 20)

The Foley Defendants seek leave to file, permanently under seal, certain evidentiary exhibits in support of their motion to dismiss Plaintiff's first amended complaint.[2]  (Id.).  The exhibits at issue are six videos identified as:

1. Overhead Booking Video;

2. Holding Cell 3 Video;

3. Booking to Pod Video;

4. Booking Mugshot Camera Video;

5. Officer Bailey Body-Worn-Camera 2023-02-26_1010_X60A1 7149; and

6. Bailey Body-Worn-Camera 2023-02-26_1027_X60A1 7149.

(Id. at 3-4).  The Foley Defendants represent that Videos 1 through 4 are each twenty hours long; they make no representation regarding the length of Videos 5 and 6.[3]  (Id. at 4).

---

[2] The Foley Defendants have filed a motion to dismiss Plaintiff's first amended complaint and a supporting memorandum, and the motion to dismiss is currently pending before the Court. (Docs. 24, 25). Citing Johnson v. City of Atlanta, 107 F.4th 1292, 1304 (11th Cir. 2024), the Foley Defendants assert that these evidentiary materials can be considered at the motion-to-dismiss stage by virtue of "the incorporation-by-reference doctrine, which allows a court to consider documents outside the four corners of the complaint so long as the evidence is central to Plaintiff's claims and the authenticity of the documents is undisputed." (Doc. 20 at 2 n.1).  The Court expresses no opinion on the validity of this argument at this time.  However, for the purpose of ruling on the motion to seal, the Court will assume the materials' admissibility.

[3] Although S.D. Ala. GenLR 5.2(b)(2) required the Foley Defendants to submit the videos with their motion for leave to file under

As grounds for requesting that these videos be placed under seal permanently, the Foley Defendants assert that the exhibits contain video and audio of five categories of information that should never be made public:

A. <u>Confidential and personal information regarding Decedent Myers</u>: The Foley Defendants represent that Video 1 contains Decedent Myers's "confidential and personal information including full name, address, telephone number, employment, and medical history," and Video 5 contains Decedent Myers's "personal identifying information, including address, phone number, and employer information." (<u>Id.</u> at 3-4).

B. <u>Personal identifying information of other inmates</u>: The Foley Defendants represent that Video 1 contains "discussions of other inmates and their personal identifying information, including addresses and phone numbers." (<u>Id.</u> at 3).

C. <u>Medical personnel responding to Decedent Myers</u>: The Foley Defendants represent that Video 2 "[d]epicts paramedics attempting to provide medical assistance to Myers and depicts medical personnel ultimately pronouncing Myers deceased." (<u>Id.</u>).

---

seal, the videos were subsequently filed (conventionally) with the Foley Defendants' motion to dismiss.  (Doc. 26).

D. <u>Medical attention provided to other inmates</u>: The Foley Defendants represent that Video 2 shows "footage of a jail nurse administering what appears to be medication to another unidentified inmate," that Video 4 contains "video footage showing a jail nurse responding to an unidentified inmate's request for medical assistance," and that Video 6 "depicts Officer Bailey summoning the jail nurse to provide medical attention to another inmate that is experiencing a medical issue in holding cell #4."  (<u>Id.</u> at 3-4).

E. <u>Identification of other inmates</u>: The Foley Defendants represent that Videos 2, 3, 4, and 6 contain "identities of other inmates that are not parties to this lawsuit who may have a protected interest in not being identified as being an inmate at the Foley City Jail."  (<u>Id.</u>).

II. **<u>Governing Law</u>**

The right of the public and the press to access judicial records is founded on constitutional and common law.[4]  <u>Chicago</u>

---

[4] If the documents sought to be sealed had been produced in discovery, Federal Rule of Civil Procedure 26 would come into play. However, because no discovery has occurred in this case, because these videos originated with the movants, and because the movants are filing them in support of a dispositive motion (as opposed to a discovery motion), Rule 26 is not a basis for the Court's ruling. That said, the same "good cause" standard applies whether the bases for sealing are constitutional law, common law, and/or Rule 26. <u>See</u> <u>Chicago Tribune</u>, 263 F.3d at 1315 ("The good cause determination [under Rule 26] will also resolve the Press's constitutional right of access claim, because in the context of presumptively confidential discovery materials, the constitutional

Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1310-13 (11th Cir. 2001) (per curiam).  "The operations of the courts and the judicial conduct of judges are matters of utmost public concern." Romero v. Drummond Co., Inc., 480 F.3d 1234, 1245 (11th Cir. 2007) (quoting Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (1978)).  Further, "[t]he common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." Chicago Tribune, 263 F.3d at 1311.  As the United States Court of Appeals for the Eleventh Circuit has "long recognized, '[l]awsuits are public events.'"  Doe v. Ga. Dep't of Corr., 2024 U.S. App. LEXIS 32594, at *5, 2024 WL 5200055, at *1 (11th Cir. Dec. 23, 2024) (per curiam) (quoting Doe v. Frank, 951 F.2d 320, 324 (11th Cir. 1992)).  "Public scrutiny 'enhances the quality and safeguards the integrity of the factfinding process,' and 'permits the public to participate in and serve as a check upon the judicial process.'" Id., 2024 U.S. App. LEXIS 32594, at *6, 2024 WL 5200055, at *1 (quoting Globe Newspaper Co. v. Super. Ct., 457 U.S. 596, 606 (1982)).  Additionally, "open proceedings may be imperative if the public is to learn about the crucial legal issues that help shape

---

right of access standard is identical to the Rule 26 good cause standard. . . . [A]s to the documents submitted in connection with the motions for summary judgment, the Rule 26 good cause determination will resolve the Press's common-law right of access claim to these materials, as the standards are the same.").

5

modern society." Newman v. Graddick, 696 F.2d 796, 801 (11th Cir. 1983).

The right of access "includes the right to inspect and copy public records and documents." Romero, 480 F.3d at 1245 (quoting Chicago Tribune, 263 F.3d at 1311). Although the "right of access is not absolute," id., the Eleventh Circuit has repeatedly confirmed its commitment to safeguarding the public's and media's right to judicial records:

> Judicial records are open to the public, and for good reason — access to judicial proceedings is crucial to our tradition and history, as well as to continued public confidence in our system of justice. *This Circuit has been resolute in our enforcement of that presumption of public access.*

Callahan v. United Network for Organ Sharing, 17 F.4th 1356, 1358-59 (11th Cir. 2021) (emphasis added).

Judges in this district follow the Eleventh Circuit's lead in this area, diligently scrutinizing requests to seal judicial records. See, e.g., Spire, Inc. v. Cellular South, Inc., 2017 U.S. Dist. LEXIS 228562, at *4-8, 2017 WL 11512582, at *1-3 (S.D. Ala. Dec. 22, 2017) (Dubose, J.) (applying, *inter alia*, Chicago Tribune and Romero); Bass v. M/V Star Isfjord, 2024 U.S. Dist. LEXIS 164690, at *10, 2024 WL 4182920, at *4 (S.D. Ala. Sept. 12, 2024) (Moorer, J.) ("'[T]he judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of

6

it). He may not rubber stamp a stipulation to seal the record.'") (quoting Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 945 (7th Cir. 1999)); Church v. Accretive Health, Inc., 2015 U.S. Dist. LEXIS 158476, at *7, 2015 WL 7572338, at *3 (S.D. Ala. Nov. 24, 2015) (Steele, J.) ("In short, the parties' proposed kneejerk 'seal-everything' approach, while perhaps expedient, is incompatible with Chicago Tribune, Rule 26, General L.R. 5.2, and this Court's obligation to preserve the public's right of access to court proceedings absent a specific showing that overriding private interests exist.").

"[W]hether a document is a judicial record [to which a right of access attaches] depend[s] on the type of filing it accompanied." Fed. Trade Comm'n v. AbbVie Prods., LLC, 713 F.3d 54, 64 (11th Cir. 2013). Because the videos were filed as evidentiary support for a dispositive motion – namely, a motion seeking dismissal of Plaintiff's first amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure – they are subject to the right of access. See Romero, 480 F.3d at 1245 ("Material filed in connection with any substantive pretrial motion, unrelated to discovery, is subject to the common law right of access.") (citing Chicago Tribune, 263 F.3d at 1312).

The right of access encompasses more than motions – it also encompasses complaints and attachments thereto. AbbVie Prods.,

7

713 F.3d at 64. Indeed, the Eleventh Circuit's "enforcement of [the] presumption of public access" is so "resolute" that the definition of judicial records which are subject to the right of public access even "include[s] a narrow class of documents not formally filed with the court." Callahan, 17 F.4th at 1359, 1363; see Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC, 918 F.3d 1161, 1166, 1168 (11th Cir. 2019) (concluding that even though the State of Alabama's lethal injection protocol "was never formally filed with the district court and [was] not in the electronic docket," the protocol was nonetheless a judicial record "because it was submitted to the district court to resolve disputed substantive motions in the litigation, was discussed and analyzed by all parties in evidentiary hearings and arguments, and was unambiguously integral to the court's resolution of the substantive motions in [the prisoner's] as-applied challenge to the protocol"). Accordingly, the Court concludes that "the common law presumption of public access attached" to the six videos upon their filing by the Foley Defendants in support of their motion to dismiss. See Romero, 480 F.3d at 1246.

To overcome the presumption of public access, the party wanting to remove the documents from public view and scrutiny must establish "good cause" for its request. Romero, 480 F.3d at 1146 ("The common law right of access may be overcome by a showing of good cause, which requires 'balanc[ing] the asserted right of

8

access against the other party's interest in keeping the information confidential.'") (quoting Chicago Tribune, 263 F.3d at 1309). "Courts determine whether good cause exists by looking to the nature and character of the information in question." Advance Local Media, 918 F.3d at 1169 (citing Romero, 480 F.3d at 1246). The Eleventh Circuit has identified a number of factors to consider and weigh when balancing the competing interests of the "right of access against the other party's interest in keeping the information confidential." Romero, 480 F.3d at 1246 (quoting Chicago Tribune, 263 F.3d at 1309). Possible relevant factors include:

> whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

Id. at 1246. In addition to these factors, "a judge's exercise of discretion in deciding whether to release judicial records should be informed by a 'sensitive appreciation of the circumstances that led to the production of the particular [record] in question.'" Chicago Tribune, 263 F.3d at 1311 (cleaned up) (quoting Nixon v. Warner Comm., Inc., 435 U.S. 589, 598, 602-03 (1978)).

9

### III. Analysis

Turning to the instant motion, the Foley Defendants state that they "only seek to seal video footage that contains personal identification information, medical history of Myers, and the identities of third-parties who are not involved in the instant litigation." (Doc. 20 at 3).[5] Superficially, this sounds reasonable. However, the Foley Defendants then assert that four of the six videos – which are each approximately twenty hours long – "cannot be redacted due to the proprietary format of the video player required for playback." (Id. at 4). It appears that even if redaction were possible, the Foley Defendants would rather not undertake that task because "[r]edacting the videos would take an inordinate amount of time and attorney resources." (Id.). As for the two other (and presumably shorter) videos, the Foley Defendants represent that "redactions to videos in Exhibits 5 and 6 are not practical due to the relevant (albeit confidential) information depicted on each." (Id.). The Foley Defendants thus conclude that "there are no alternative means at this point to address

---

[5] Notably, the Foley Defendants do not suggest that any of them have any self-interest in sealing the videos. They do not, for example, identify any security concerns based on public knowledge regarding the location/placement of cameras in the jail or depictions of jail procedures. Nor do they represent that the videos reveal the identities of undercover law enforcement officers or confidential informants or capture discussions of ongoing criminal investigations.

10

confidentiality and privacy concerns aside from sealing the [six video] exhibits." (Id.).

In response, Plaintiff states that he "understands the need to protect legitimate privacy interests," but "sealing the entirety of these materials from public view is contrary to the strong presumption of public access to judicial records . . . ." (Doc. 30 at 1). Plaintiff asserts that the "death of Christopher Myers while in custody is a matter of significant public concern" and that "[b]lanket sealing of all video evidence prevents the public from evaluating the actions of public officials and undermines transparency in the judicial process." (Id. at 2). Plaintiff contends that "the entry of a narrowly tailored protective order that would safeguard personal identifying information or sensitive medical details, while still allowing the public access to non-confidential portions of the exhibits" is appropriate, as opposed to blanket order permanently sealing all of the videos. (Id.). According to Plaintiff, "[r]edaction, blurring of non-party faces, or audio editing could accomplish these goals without the need for wholesale sealing." (Id.). Consequently, Plaintiff requests that the Foley Defendants' "request for blanket sealing of the exhibits" be denied, and that the Court instead consider "a narrowly tailored protective order that addresses legitimate privacy concerns without unduly restricting public access." (Id. at 2-3).

On the record before the Court, the motion to permanently seal all eighty-plus hours of video footage in this case falls woefully short of establishing good cause for permanently restricting public access to the videos. While there are no doubt legitimate concerns with regards to protecting medical and other confidential information, the requested motion seeks to permanently seal certain information which is already publicly available, such as Decedent Myers's full name, address, and medical history.[6] In the memorandum in support of their motion to dismiss, the Foley Defendants discuss Decedent Myers's personal medical history and also produce <u>seven</u> photographs which they represent are still photos from the videos that they provisionally filed under seal. (Doc. 25 at 11-15, 18). The Foley Defendants' public disclosure of these select portions of the videos cannot be reconciled with their argument that the videos should be sealed permanently in their entirety.

Finally, a review of the Foley Defendants' motion and supporting memorandum and Plaintiff's response reveals that counsel for the parties have not met and conferred in good faith about possibly redacting the videos or formulating a joint proposed

---

[6] Decedent Myers's medical history, which is at issue in this case, is discussed in the Foley Defendants' motion to dismiss. Indeed, the Foley Defendants expressly identify in their supporting memorandum of law the medical conditions Decedent Myers disclosed during his booking procedure. (<u>See</u> Doc. 25 at 8).

12

protective order to safeguard confidential information in this case.  Accordingly, the undersigned **DENIES** the Foley Defendants' motion to permanently seal the six identified videos in this case and directs counsel for the parties to meet and confer no later than **February 13, 2026,** about appropriate safeguards to adequately protect confidential information in this case.  The parties are **ORDERED** to file with the Court, no later than **February 20, 2026,** a joint proposed order addressing the safeguarding of confidential information in this case.  If the parties are not able to reach an agreement, they shall so notify the Court in writing, no later than **February 20, 2026,** and the undersigned will schedule a hearing to address the safeguarding of confidential information in this case.  **The videos shall remain provisionally sealed** until further order of the Court.

    **DONE** this **30th** day of **January, 2026.**

                                      **/s/ SONJA F. BIVINS**
                                    **UNITED STATES MAGISTRATE JUDGE**